## MARY KLEIN v. JOHN FRERICHS.[1]

October 16, 1914.

Nos. 18,904—(26).

**Trover and conversion — defense not proven.**

1. In an action for conversion of a team, if plaintiff proves title, the defendant has not made out a defense by showing merely that the team, taken under a writ of replevin from plaintiff's husband, was afterwards returned because rebonded by him.

**Unauthorized chattel mortgage — title to team.**

2. The defendant claimed title through a chattel mortgage executed by plaintiff's husband, but failed to show any authority from plaintiff, either direct or by way of estoppel, to mortgage the team. Such being the case, no prejudicial error can be asserted by defendant on the immaterial issue whether the mortgage purported by its terms to include this team. If plaintiff proved ownership she was entitled to a verdict regardless of what was included in her husband's unauthorized mortgage.

Action in the district court for Jackson county. The facts are stated in the opinion. The case was tried before Quinn, J., and a jury which returned a verdict for $318 in favor of plaintiff. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*O. J. Finstad,* for appellant.

*Wilson Borst,* for respondent.

[1] Reported in 149 N. W. 2.
127 M.—12.

HOLT, J.

Plaintiff sued for the conversion of a team of mares, one five and the other six years old. The defense was that the mares belonged to her husband who mortgaged them when two years of age to defendant; that, after default in the chattel mortgage, defendant caused the mares to be taken from the possession of plaintiff's husband on a writ of replevin; that thereupon her husband rebonded the team and it was returned to the husband's possession and received and accepted by him and plaintiff; that thereafter in the trial of the replevin action plaintiff took part and assisted her husband in trying to establish the ownership of the mares in herself, but that the verdict was in favor of this defendant that he was entitled to the possession under his mortgage; and that said action is still pending. Defendant also pleaded facts which would tend to estop plaintiff from disputing his title under the mortgage. The appeal is from the order denying defendant a new trial after verdict against him.

Plaintiff's asserted title to the mares originated when they were very young colts. The evidence was that a few days after the one was foaled its mother died; the mother of the other refused to nourish it. Thereupon plaintiff's husband, the owner of the dams or these colts, told plaintiff that if she would bring up the colts on cows' milk she could have them. She accepted the offer, and thus raised the colts, being the mares in controversy. They remained on the farm occupied and cultivated all the time by her husband and family. They were fed from the products of the farm and were worked thereon the same as other similar stock.

There is no contention, and none could well be made, that plaintiff's ownership of the team, when seized under the writ of replevin in the action against her husband, was not for the jury. But defendant insists that the charge of the court was, in general, too favorable to plaintiff, so that the jury failed to reach a just result. It is probably true that the charge would have been better balanced and less open to a suspicion of partiality if less of the testimony and claims of plaintiff and her witnesses had been repeated therein. But on the issue of ownership we find no such over statement of the

testimony favorable to plaintiff that we may say that prejudice resulted to defendant.

No defense was attempted under the allegations that plaintiff had concluded herself by her participation in, and the result of, the replevin suit. Nor does the evidence show her cause of action destroyed by a return and acceptance of the mares after the conversion. All that the record discloses is that, a few days after the mares were taken on the writ of replevin, they were rebonded by the defendant in that action, plaintiff's husband, and returned to him on the farm he and his family occupied. A return of the team under these circumstances did not, of itself and alone, absolve defendant from liability to plaintiff, were she the owner. But the court left to the jury to say whether she accepted and took it into her possession so as to defeat a recovery. In that connection the court stated that the return by defendant to plaintiff should be "free and clear from any obligation or claim of the husband's or any other person's." This statement is not accurate, for it is plain that if her husband, or some one else, had a claim against the mares previous to defendant's taking under the writ, he was not to redeliver them free from such claim. But we deem the misstatement of no consequence. The return was not a voluntary act of defendant undoing the wrong done to plaintiff's property rights. The law substituted the bond for the property and in consequence thereof the mares were returned. The evidence in reality made no issue of a return to and acceptance by plaintiff of the property taken under the writ, so that the inaccuracy in the charge of the court cannot be reversible error, even if it should not be passed by as one of those unintentional slips of the tongue which sometimes find place in an unwritten charge and upon which error cannot be predicated unless the court's attention was directed thereto at the time.

The defense of estoppel was not submitted to the jury. No fault is found because thereof. Nor could there be. There was no evidence that plaintiff knew of the chattel mortgage until long after it was given, and no testimony whatever that she ever consented that her property be included therein, or ever knew that it purported to cover the team in question. If she owned the same, the husband's

unauthorized mortgage thereon did not affect her ownership in the least. Unless she proved ownership she would fail even if the mortgage did not include this team. Under this situation it became wholly immaterial whether the mortgage covered either mare. McCarvel v. Phenix Ins. Co. 64 Minn. 193, 66 N. W. 367. Therefore no reversible error can be predicated upon the reception of certain testimony that Henry Frerichs, one of the mortgagees in the chattel mortgage under which defendant claims title, was informed, when making a list of the property to be mortgaged, that plaintiff owned the animals in controversy. The submission of the question whether the mortgage given by plaintiff's husband in terms embraced this team was giving the defendant an unwarranted chance to win. But that aside, had the question been in the case properly, we think, there was no error in the admission of the testimony referred to.

We find no prejudicial error which warrants a reversal.

Order affirmed.