# WILLIAM SEMBUM v. DULUTH & IRON RANGE RAILROAD COMPANY.[1]

May 23, 1913.

Nos. 18,000—(115).

**Fire from locomotive — evidence.**

1. In this case, where recovery is sought for damage done to plaintiff's land by a fire alleged to have been set by the defendant's locomotive, the evidence is not so manifestly in favor of the defendant that the court erred either in refusing to give judgment for defendant notwithstanding the verdict, or in denying its motion for a new trial.

[1] Reported in 141 N. W. 523.

---

Note—As to the liability of a railroad for setting fires which spread to property of others, see note in 21 L.R.A. 262.

On the question of the presumption as to negligence in case of railway fires, see note in 15 L.R.A. 40. And for effect of presumption from fact that fire was set by locomotive to carry question of negligence to jury, see note in 5 L.R.A. (N.S.) 99.

**Evidence admissible.**

2. No error is found in receiving certain testimony bearing on an issue tendered by the pleadings.

**Wording of charge — duty of counsel.**

3. If an isolated sentence in the charge of the court is so worded that it may be misconstrued by the jury, it is the duty of the counsel to call the court's attention thereto before the jury retires. The sentences complained of when considered in connection with what precedes in the charge, *held* not liable to mislead the jury.

Action in the district court for St. Louis county to recover $4,500 damages for fire set by defendant's locomotive. The answer alleged that plaintiff made claim against the Adriatic Mining Company for property consumed by a fire started from its steam shovel, which fire was the same referred to in the complaint, and thereupon plaintiff and the mining company adjusted plaintiff's claim for damages and paid plaintiff a valuable consideration in settlement. The answer further alleged that another action was pending between the parties upon the identical cause of action, wherein the plaintiff is the plaintiff in this action and the defendants are the defendant herein and the Adriatic Mining Company. The reply denied the new matter in the answer.

The action was tried before Ensign, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict of $666 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or a new trial, it appealed. Affirmed.

*Baldwin & Baldwin,* for appellant.

*J. De La Motte,* for respondent.

HOLT, J.

On the main line of the defendant's railway running from Two Harbors to Ely, just before it crosses the Mesaba range of hills or mountains, is the station Mesaba. Within a quarter of a mile north of the station, a short branch line diverges first to the west, then curves to the southwest passing by the Adriatic mine, thence turns to the northwest to another mine called the Knox location. The

Adriatic is about two miles from Mesaba station and the Knox about half a mile further away. The main line runs in a northwesterly direction just prior to reaching Mesaba station and practically in the same direction as it proceeds towards the next station north, called Embarrass.

In June, 1910, the country around Mesaba was exceedingly dry. About noon on June 9 of that year, a fire started on the north side of defendant's track and within 40 feet thereof at the Adriatic mine. The fire was noticed within a few minutes after a locomotive of defendant had passed the spot. The one who so did threw a pail of water on it and supposed that it was put out. However, it started up again within a short time and got entirely beyond control, destroying not only the homes and property at the Adriatic, but reached the Knox location in the afternoon, consuming some 20 houses there. It also passed into the woods or muskeg swamp between this branch and defendant's main line, and the contention of the plaintiff is that it burned and smouldered in there until the thirteenth of June when it crossed over to the east of the defendant's main line about three-fourths of a mile north of Mesaba station; threatened Mesaba village, located about a mile to the east from the station; thence spread northeasterly over the range and beyond, reaching plaintiff's premises on June 18, destroying his fences, burning over and damaging about 60 acres of his land. The plaintiff's land is about 7 miles in a northerly or northeasterly direction from Mesaba station. The verdict was for the plaintiff, and the defendant appeals from the order denying judgment in its favor and also refusing it a new trial.

The errors assigned on this appeal relate to the sufficiency of the evidence to sustain the verdict, to rulings on the admission of certain testimony, and to some statements in the charge of the court.

The defendant earnestly contends that the verdict cannot stand for lack of evidence, that it is entitled to judgment notwithstanding the verdict, and that this court should so order. The counsel for the defendant frankly conceded on the oral argument that, upon the evidence, the jury would be justified in finding that the fire which destroyed the Adriatic and Knox location on June 9, 1910, origi-

nated from the defendant's locomotive. And we think that, if it was established that on June 13, 1910, the fire, which had been so set and allowed to escape and smolder in the woods, crossed to the east side of the main line of the defendant's railway, a finding that such fire thereafter spread to the north and east and came upon plaintiff's land would not be open to just criticism.

The sharply-drawn issue at the trial was the date upon which the fire did cross over to the east of the main line. The plaintiff contended that it so passed over on June 13 or prior to the afternoon of June 14, and the defendant that it did not until June 20. If the defendant was right as to this date, the verdict should have been in its favor, for plaintiff's property was damaged two days prior thereto. We have examined the record with care, and are unable to escape the conclusion that it was for the jury to determine the true date. The court positively directed the jury to render a verdict for the defendant, if the fire crossed to the east of the main line of the defendant's railway on June 20, 1910. Hence the verdict against it necessarily finds that it crossed on the Monday previous as claimed by plaintiff. It must be admitted that the evidence of the defendant is strongly fortified by dates upon telegrams sent in regard to the fire, records kept by it as to movements of trains, and the experience of the train crews who passed through or assisted in fighting the fire and whose recollections as to date were refreshed by these telegrams and records.

But, on the other hand, we have the testimony of four settlers living from six to ten miles to the northeast of Mesaba station who went on the defendant's train from Embarrass to Duluth on the twelfth of June for the purpose of proving up their homestead claims in the United States land office, and who did so on the thirteenth and fourteenth, returning over defendant's railway in the afternoon of the last named date to Embarrass. These four men testify positively that when they returned on the afternoon of the fourteenth, the fire was burning on both sides of the track. The accuracy of their testimony as to date was attested by the records in the United States land office showing that on the thirteenth and fourteenth, they appeared in person before the land office official in

Duluth. In this situation, it is not for the court to say that these men were mistaken or falsified. There was also testimony from several witnesses, residents of Mesaba village and persons who walked across the country to the northeast of Mesaba on the sixteenth or seventeenth, tending to support the plaintiff's claim that the fire crossed over the main line of the defendant's railway on the thirteenth, or within a week after the Knox location burned. The defendant was not entitled to a directed verdict on this record.

Soon after the fire was discovered at the Adriatic mine while Mr. Mudge, the superintendent of the mine, and his men were endeavoring to put it out, the locomotive and crew of defendant were near by and a conversation took place between Mr. Mudge and defendant's locomotive engineer. Mr. Mudge, as a witness, testified that he requested this engineer to assist in putting out the fire, but the latter considered the methods employed by Mr. Mudge ineffectual. At this point, against the defendant's objection that it was irrelevant, immaterial and incompetent, the witness was permitted to relate this conversation with the engineer:

"I says, 'Why ain't you out fighting the fire?' 'Oh,' he says, 'we have got a screen on our engine.' I says, 'what do you mean to say?' He says, 'we have got a screen on our engine.' 'Well,' I says, 'I think it would be a great deal more to your credit as men if you were to get out and fight this thing and try to get it under, notwithstanding who is responsible for it.' That was the only answer I could get out of him. I says 'Your old screen failed to screen this time.'" "Q. And then he took no part in assisting to put out the fire, did he? A. No, sir." A motion to strike out the foregoing evidence was denied. Upon these rulings, error is predicated.

The contention is that the defendant's liability is absolute, if it be proven that its locomotive set the fire, hence evidence such as this tending to prove negligence of defendant's servants in failing to put out a fire is immaterial. But counsel overlook the fact that one of the allegations of the complaint is that the fire kindled upon the defendant's land at the Adriatic mine was negligently allowed by it to escape therefrom. Moreover, we are of opinion that the

conversation objected to could not possibly have prejudiced the defendant on the controlling fact in the case, the one point of defense upon which the defendant directed all its affirmative evidence, namely, the date upon which the fire crossed the main line of the defendant's railway. And this date was, according to both litigants, several days after this conversation.

As already indicated, the dominant, sharply-contested and controlling issue litigated was the time the fire crossed the main track of the defendant. The attorneys for both sides realized its significance, and the court also properly directed the attention of the jury to its decisive effect on their verdict. In the concluding sentences of the charge is found this part which is now complained of:

"Examine all of the evidence carefully and fairly, the evidence of the plaintiff, the evidence of the defendant, and determine the real issue in this case: When did the fire in question cross the defendant's railroad tracks? If on Monday, the thirteenth day of June, your verdict will be for the plaintiff. If on Monday, the twentieth day of June, your verdict will be for the defendant."

The court had just prior to the above statement given instructions requested by the defendant, clearly stating and emphasizing the fact that the verdict must be for the defendant, unless plaintiff proved that the fire which damaged him originated from a locomotive of the defendant on June 9, 1910, near the Adriatic mine; that the burden rested on plaintiff to prove that this fire crossed the main track of the defendant prior to June 20; that the defendant was not required to show how, when or where the fire originated which damaged the plaintiff, but that plaintiff, by a fair preponderance of the evidence, must prove the fact that his damage was caused by the fire which, about June 9, 1910, destroyed the Knox location, and also that such fire originated from a locomotive of the defendant. The court in the first part of the charge also clearly set forth that the plaintiff's right to recover depended on his ability to prove that a locomotive of the defendant set the fire which subsequently extended to and damaged the plaintiff's premises.

We therefore think that the jury could not have been misled by the concluding words of the court above quoted. It cannot be assumed that what had been stated so clearly before by the court and

reiterated in the instructions given at the defendant's request as to the necessity of the plaintiff proving the origin and identity of the fire which damaged him was considered by the jury as inapplicable, if they found that the fire crossed the track on the thirteenth of June. Furthermore, if the defendant's counsel apprehended that there was any probability of a misconstruction of the charge in the words used, the attention of the court should have been directed thereto before the jury retired. Applebee v. Perry, 87 Minn. 242, 91 N. W. 893; Kramer v. Northwestern Elev. Co. 97 Minn. 44, 106 N. W. 86.

The court, in stating the issues and plaintiff's claim that the fire which had its origin at the Adriatic mine came upon his premises, said "There is only one fire for you to follow here, or to consider. The parties agree as to that substantially." This part of the instruction is complained of. No possible criticism can be made, if it is taken as conveying the meaning that it is only necessary for the jury to follow this one fire which started at the Adriatic mine, for if that one fire cannot be traced to plaintiff's premises, the case ends. If the defendant believed another and prejudicial meaning might be given the words used by the court, its duty was to then speak as above indicated.

The order is affirmed.